UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TAMMY FOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18CV248 RLW |
| | ) |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the applications of Tammy Fox ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF No. 14), and Defendant has filed a brief in support of the Answer (ECF No. 21). For the reasons set forth below, the Court affirms the decision of the Commissioner.

### I. Procedural History

Plaintiff protectively filed her applications for DIB under Title II of the Social Security Act and for SSI under Title XVII of the Act on June 3, 2015. (Tr. 13, 187-99) Plaintiff claimed she became disabled on May 11, 2015 because of chronic migraine headaches; knee injury; heart

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

problems; and neck problems. (Tr. 113) Plaintiff was initially denied relief on July 13, 2015. (Tr. 111-17) At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on September 26, 2017. (Tr. 40-88, 119) By decision dated March 12, 2018, the ALJ found Plaintiff was not disabled. (Tr. 13-24) On August 30, 2018, after declining to review additional evidence, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-4) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Medical and Other Relevant Evidence Before the ALJ

With respect to the medical records and other evidence of record, the Court notes Plaintiff thoroughly set forth the medical evidence in her Brief in Support of the Complaint. (ECF No. 14 pp. 8-14) In response, the Defendant incorporates this medical evidence in his Brief in Support of the Answer. (ECF No. 21) The Court adopts the medical evidence set forth by the Plaintiff, as they provide a fair and accurate description of the relevant medical record before the Court. Additional specific medical facts will be discussed as needed to address the parties' arguments.

Evidence relating to Plaintiff's description of her symptoms and functional abilities indicates Plaintiff believed she was unable to work due to problems with her knees and neck. She lived in a house with her husband of two years. Plaintiff and her husband divided the chores such as doing dishes and laundry. During the day, Plaintiff tidied the house and did dishes by hand. On cooler days she went outside and gardened a little. She last worked at Rapco Wiring in February of 2016. She also previously worked as a medical assistant at a pain clinic and a delivery driver for an automotive parts company. She was unable to retain these jobs due to neck problems. (Tr. 42-56)

Plaintiff testified she had surgery on her neck in May of 2016 but continued to have the same problems with her neck. Plaintiff experienced headaches and pain in her shoulder. She received several injections and underwent carpal tunnel surgery. Doctors were unsure of the source of Plaintiff's pain. Plaintiff testified she had difficulty gripping or grabbing things with her right hand. Her range of motion in her right arm was okay, but she had range of motion problems with her shoulder and neck. (Tr. 56-59)

Plaintiff described her shoulder problem as beginning behind her shoulder, moving up her neck, and causing severe headaches. She stated the headaches go from her neck to the base of her skull and cause her to throw up. This happens three or four times per week and lasts into the night. Plaintiff took Flexeril and hydrocodone for pain. Plaintiff also had spells where she blacked out. In addition, she experienced problems in both knees. She had arthroscopic surgery on both knees 10 years ago and surgery on the left knee for a meniscus tear in 2015. Plaintiff did not know whether the surgery was successful, and she was no longer being treated by the surgeon. (Tr. 60-66)

Plaintiff further testified she was only able to walk to her mailbox 40 feet from her front door and was unable to walk one block. Her husband did the grocery shopping. Plaintiff acknowledged she was not seeking further treatment for her knees. In addition, she took medication for tachycardia. Plaintiff was unsure whether her heart problem rendered her unable to work. She stated she was done seeing doctors. With respect to her mental health, Plaintiff stated her general practitioner prescribed medication for anxiety. Plaintiff testified she had always lived with anxiety. (Tr. 66-69)

Plaintiff had problems doing dishes because she was unable to stand for more than eight minutes before needing to sit down for eight minutes. She felt pain in her shoulder blade and

3

neck, which radiated to her head. Sitting helped with the nausea, dizziness, tunnel vision, and the feeling she would pass out. She experienced this whenever she was standing. Her anxiety and depression made her feel useless, but she had no problems with her personal care. Plaintiff testified she experienced tunnel vision every couple months. She also had problems moving her neck or keeping it in a fixed position. Plaintiff was squirming during the hearing because she usually lay down in the mornings and afternoons with a neck pillow. Plaintiff stated she wanted to work. If her neck improved, she believed her headaches would go away. (Tr. 69-78)

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE to assume an individual closely approaching advanced age, with a high school education and Plaintiff's past relevant work. The person was limited to light work with a maximum of standing and walking four hours a day. She required a sit/stand option every 30 minutes. The individual could never climb ladders, ropes, or scaffolds, with no limitations on balance. In addition, the person needed to avoid exposure to operation and control of moving machinery, unprotected heights, and use of hazardous machinery. Given this hypothetical, the VE testified the individual could not perform her past relevant job because of the sit/stand option. However, absent the sit/stand option, the person could perform sedentary jobs such as optometric tech, hand assembler, table worker, and machine tender. If the individual was capable of the full range of light work, she could return to the past relevant work as a medical assistant and optometric tech. All jobs would be eliminated if the individual missed two or more days of work per month. Finally, if the person's fine or gross manipulation with the right dominant was occasional, the jobs would be eliminated. The VE stated her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), although the absenteeism and sit/stand option were not addressed

by the DOT. At the end of the hearing, the ALJ left the record open for a month for more information on Plaintiff's knee and carpal tunnel problems. (Tr. 78-87)

In a Function Report dated June 27, 2015, Plaintiff stated she frequently passed out and had protruding discs in her C-spine. During the day, Plaintiff got out of bed, sat until lunch, got up to go to the bathroom or eat, and went to bed at 7:00 p.m. She only cooked quick meals and could not stand to cook or wash dishes. She could do chores for 5 or 10 minutes at a time. Plaintiff seldom drove or shopped. Plaintiff stated her conditions restricted most physical and mental functioning. (Tr. 254-61)

### III. Discussion

#### A. Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant

fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the

claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove she is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the

Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

### B. The ALJ's Decision

The ALJ's Decision conforms to the five-step process outlined above. In the decision dated March 12, 2018, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020. She had not engaged in substantial gainful activity since May 11, 2015, her alleged onset date. Plaintiff's severe impairments included degenerative disc disease of the cervical spine. The evidence failed to establish Plaintiff's alleged impairments of degenerative joint disease of the knees and carpal tunnel syndrome had a significant impact on Plaintiff's functional capacity and were therefore non-severe. In addition, Plaintiff's allegations of depression and anxiety were non-severe. The ALJ found Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13-19)

After carefully considering the record, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work except she could never climb ladders, ropes, or scaffolds. She could occasionally perform all other postural activities with no limitation on balancing. However, Plaintiff should avoid all exposure to hazards, unprotected heights, and operational control of moving machinery. Based on this RFC, the ALJ found Plaintiff could perform her past relevant work as an optometric technician and medical assistant. Thus, the ALJ concluded Plaintiff had not been under a disability from May 11, 2015 through the date of the decision. (Tr. 19-24)

## C. Analysis of the Issue Presented

Plaintiff raises two claims in her Brief in Support of the Complaint: (1) the RFC findings are not supported by some evidence as required by the standards set forth in *Singh* and *Lauer*; and (2) the hypothetical question to the VE does not capture the concrete consequences of Plaintiff's impairment, and therefore the ALJ's decision is not supported by substantial evidence. The Defendant responds substantial evidence supports the ALJ's consideration of Plaintiff's severe and non-severe impairments and the ALJ's determination of Plaintiff's RFC. Defendant further contends the ALJ properly relied on the VE testimony to find Plaintiff was not disabled.

### 1. The ALJ's RFC Determination

Plaintiff claims the ALJ erred in the RFC assessment because the ALJ failed to properly consider the evidence of Plaintiff's headaches, degenerative joint disease of the knees, carpal tunnel syndrome, as well as her depression and anxiety. Specifically, Plaintiff argues the ALJ erred in finding these conditions non-severe and failed to properly consider them in determining Plaintiff's RFC. Plaintiff further contends the ALJ failed to provide any rationale or authority for determining Plaintiff could perform light work activity.

A claimant's RFC is the most she can do, despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v.*

*Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s). [2] SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to her daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). If the ALJ finds the statements inconsistent

---

[2] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012). Further, "'for a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.'" *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Brown ex rel. Williams v. Barnhart,* 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted)).

Here, the record shows that the ALJ properly considered the medical evidence and based the RFC determination on all of the evidence contained in the record. The ALJ found Plaintiff's symptoms relating to her carpal tunnel syndrome had improved after her right carpal tunnel release surgery on July 28, 2017 by Kyle O. Colle, D.O. (Tr. 16, 689-91) On August 4, 2017, Plaintiff reported significant improvement of her right hand discomfort with some burning right shoulder pain. Plaintiff's only complaint was neck pain which Plaintiff attributed to arthritis. Plaintiff was given a 5-10 pound lifting limitation and told to avoid gripping with her right hand during her postoperative course. (Tr. 692-95) On September 12, 2017, Plaintiff complained of cervical, scapula, and interscapular discomfort. The mental status exam was normal. Plaintiff's strength in upper and lower extremities was 5/5 bilaterally, and she had symmetrical sensation bilaterally in her upper extremities. Plaintiff exhibited full range of motion in her shoulders. Dr. Colle noted Plaintiff was doing very well following her carpal tunnel release surgery. (Tr. 696-701) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (*quoting Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

With respect to Plaintiff's knee problems, the ALJ found, despite a history of arthroscopic surgery in both knees over 10 years ago, Plaintiff had been able to work for two

11

years, and over a year and a half had passed since she last saw a doctor for knee-related complaints. The ALJ observed Plaintiff did not seek medical treatment with an orthopedist, pain management specialist, or physical therapist to treat her alleged symptoms. (Tr. 16-17) The Court agrees Plaintiff has not presented objective medical evidence in support of her allegations of severe knee problems. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (finding a claimant's failure to pursue regular medical treatment undermines her case).

Further, with respect to Plaintiff's alleged depression and anxiety, the record shows Plaintiff complained of depression due to difficult family situations. (Tr. 17, 69-70) She took medication for her mental impairments prescribed by her primary care physician Dr. Earnhart and had never sought treatment from a mental health specialist. (Tr. 17, 69-70) Further, Plaintiff's mental status exams were normal. (Tr. 332, 358, 504, 535, 566) Substantial evidence supports an ALJ's finding that claimant's depression and anxiety are not severe where the alleged depression is situational, and medical evidenced shows no more than mild limitations. *Gates v. Astrue*, 627 F.3d 1080, 1082-83 (8th Cir. 2010). "An impairment is non-severe when medial evidence establishes only a slight abnormality, or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to perform basic work activities." *Burkart v. Berryhill*, No. 4:17-00932-CV-RK, 2019 WL 852123, at *3 (W.D. Mo. Feb. 22, 2019) (citing 20 C.F.R. § 416.920(c)).

The Court finds Plaintiff's alleged impairments of carpal tunnel syndrome, degenerative joint disease of the knees, and depression/anxiety are either controlled with medication, require little ongoing management, or show only mild limitations. Therefore, they do not cause more than a minimal limitation in Plaintiff's ability to function, and substantial evidence supports the ALJ's conclusion that these impairments are non-severe. *Burkhart*, 2019 WL 852123, at *3.

In addition, the Court finds the ALJ properly assessed the medical evidence regarding Plaintiff's degenerative disc disease of the cervical spine and complaints of related headaches. The ALJ found objective medical evidence supported Plaintiff's allegations of cervical disc disease and headaches. However, no treating doctors restricted Plaintiff from work activity, and physical examinations showed some abnormalities but did not support Plaintiff's subjective complaints. (Tr. 21-22) For instance, on August 2, 2016, Plaintiff was status post-C5-6 fusion, and her range of cervical motion was full in all directions with no tenderness. She had some limited flexion and extension. Her physician noted Plaintiff remained stable after surgery and did not wish to undergo physical therapy. (Tr. 637-40) On May 16, 2017, Plaintiff complained of cervical and trapezius pain and chronic headaches. However, on examination she had full cervical range of motion without tenderness. (Tr. 648-51) More recent medical records demonstrate normal musculoskeletal exam with some tenderness to palpation and decreased rotation of the cervical spine. An MRI revealed mild findings. (Tr. 30-36) Given these mild to moderate findings, the ALJ properly found the objective evidence did not support Plaintiff's allegations of disabling pain. *See Masterson v. Barnhart*, 363 F.3d 731, 739 (8th Cir. 2004) (finding substantial evidence supported the ALJ's determination of plaintiff's RFC where plaintiff experienced some pain and limitations, but her complaints were inconsistent with the evidence of record).

The ALJ also properly assessed Plaintiff's subjective complaints and daily activities in determining her RFC. The record shows Plaintiff was able to take care of her personal needs, cook, do dishes and laundry, perform yard work, watch TV, play games on her phone, and interact with friends and family via telephone, computer, and personal visits. (Tr. 49, 73, 255-59) An ability to engage in a number of daily activities detracts from Plaintiff's allegations

13

regarding the intensity and persistence of her symptoms. *See, e.g., Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money); *Goff,* 421 F.3d at 792 (stating that plaintiff was able to vacuum, wash dishes, do laundry, cook, shop, drive, and walk, which was inconsistent with her subjective complaints and diminished the weight given to her testimony). These inconsistencies between subjective complaints and daily living patterns cast doubt on Plaintiff's disability claim. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016). While an ability to engage in certain personal activities does not constitute substantial evidence that a claimant has the functional capacity to preform work, the ALJ may rely on a claimant's daily activities and independent medical evidence to determine she is not disabled. *Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014).

In sum, review of the record demonstrates the ALJ properly considered all the medical and nonmedical evidence in determining Plaintiff's RFC that she could perform light work with some limitations and could return to her past work as an optometric technician and medical assistant. It is the ALJ – and not a medical or other expert – who is charged with the duty to review all relevant, credible evidence in the record, including all the medical and nonmedical evidence, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. A medical expert's opinion need not address the entirety of the record. Instead, it becomes a part of the record that the ALJ must consider and weigh – along with all the other evidence of record – when determining disability. *See Wagner*, 499 F.3d at 848. Because the RFC is supported by some medical evidence, it will not be disturbed. *See*

*Baldwin v. Barnhart,* 349 F.3d 549, 448 (8th Cir. 2003); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995).

## 2. Vocational Expert Opinion

Next, Plaintiff argues that substantial evidence does not support the ALJ's determination because the ALJ erred by relying on the flawed RFC when posing the hypothetical questions to the vocational expert. A hypothetical question is properly asked if it includes impairments that are supported by substantial evidence in the record and accepted by the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). When an ALJ poses a hypothetical question to a vocational expert, the question "need only include impairments that the ALJ finds credible." *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014). If a hypothetical is properly asked, then the testimony of the vocational expert is considered substantial evidence. *Dow v. Colvin*, 174 F. Supp. 3d 1074, 1079 (E.D. Mo. 2016) (internal citations omitted).

Here, the hypothetical questions included Plaintiff's limitations that the ALJ found and comprised his RFC that he could perform light work except she could never climb ladders, ropes, and scaffolds, and she should avoid all exposure to hazards, unprotected heights, and operational control of moving machinery. (Tr. 19) The VE testified Plaintiff could perform her past relevant work as an optometric technician and medical assistant. (Tr. 24) The Court finds the hypothetical question was proper and the VE's answer constituted substantial evidence supporting the Commissioner's denial of his disability claim. *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) ("An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity.")

IV. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Tammy Fox's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

Dated this 25th day of March, 2020.

*Ronnie L. White*

_____
**RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE**